BOIES SCHILLER FLEXNER LLP
JEANNE A. FUGATE, State Bar No. 236341
*jfugate@bsfllp.com*
LENNETTE W. LEE, State Bar No. 263023
*llee@bsfllp.com*
JULIA J. BREDRUP, State Bar No. 275526
*jbredrup@bsfllp.com*
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for TABLETOP MEDIA, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

TABLETOP MEDIA, LLC,
Plaintiffs,

v.

CITIZEN SYSTEMS OF AMERICA CORPORATION; CITIZEN SYSTEMS JAPAN CO., LTD.,

Defendants.

Case No. 2:16-cv-07140-PSG (ASx)

**PLAINTIFF TABLETOP MEDIA, LLC'S OPPOSITION TO DEFENDANTS CITIZEN SYSTEMS AMERICA CORPORATION AND CITIZEN SYSTEMS JAPAN CO. LTD.'S MOTION *IN LIMINE* NO. 9 TO EXCLUDE CERTAIN TESTIMONY AND OPINIONS OF PLAINTIFF TABLETOP MEDIA, LLC'S EXPERT EFRAT KASZNIK**

**[Declaration of Jeanne A. Fugate and Exhibits Thereto filed concurrently herewith]**

**The Honorable Philip S. Gutierrez**

Date: October 9, 2018
Time: 9:00 AM
Crtrm: 6A

Trial Date: October 9, 2018



BOIES SCHILLER FLEXNER LLP

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. MS. KASZNIK IS WELL-QUALIFIED TO TESTIFY AS TO THE ACTUAL OPINIONS SHE PROVIDES .......... 2

A. Ms. Kasznik Has More Than 20 Years' Experience Working with Start-Up Companies and Advising on Their Business Models .......... 2

B. Ms. Kasznik's Opinions Do Not Require Operational Knowledge She Concedes She Does Not Have .......... 4

III. CITIZEN'S MOTION *IN LIMINE* NO. 9 IS WITHOUT MERIT AND SHOULD BE DENIED .......... 5

A. Legal Standard .......... 5

B. Citizen Concedes the Relevancy of the Testimony .......... 6

C. Tabletop's Expert, Efrat Kasznik, is Amply Qualified Under FRE 702 to Testify On the Subject of Business Models Adopted by Start-Up Companies and Tabletop in Particular .......... 6

D. Ms. Kasznik's Testimony is Reliable Under FRE 702 .......... 8

IV. CONCLUSION .......... 9


BOIES SCHILLER FLEXNER LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 5, 6

*Estate of Barabin v. AstenJohnson*,
740 F.3d 457 (9th Cir. 2014) .......... 5

*Hangarter v. Provident Life and Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) .......... 5, 6, 8

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .......... 5, 6

*Mukhtar v. Cal. State Univ., Hayward*,
299 F.3d 1053 (9th Cir. 2002) .......... 6

*Thomas v. Newton Intl. Enters.*,
42 F.3d 1266 (9th Cir. 1994) .......... 5, 8

*United States v. Alatorre*,
222 F.3d 1098 (9th Cir. 2000) .......... 6

*United States v. Vallejo*,
237 F.3d 1008 (9th Cir. 2001) .......... 5

**Rules**

Fed. R. Evid. 702 .......... 1, 5, 6, 8

## I. INTRODUCTION

Citizen's[1] Motion *in Limine* No. 9 ("Motion")—which seeks to preclude Plaintiff Tabletop Media, LLC's ("Tabletop") expert, Ms. Efrat Kasznik, from testifying on the subjects of "supply chain partnership," "supply chain management," or "assembly-oriented manufacturing processes" pursuant to Federal Rule of Evidence ("FRE") 702—is based entirely on mischaracterizations of Ms. Kasznik's proffered opinions and misrepresentations of her areas of expertise. Contrary to Citizen's unsupported argument, Stanford Business School Lecturer Ms. Kasznik does not offer opinions on or hold herself out to be an expert on the operational aspects of "supply chain partnership," "supply chain management" or "assembly-oriented manufacturing processes," nor is such expertise necessary for her opinion. Rather, Ms. Kasznik opines on Tabletop's business model and growth trajectory—opinions that she formed based in part upon her more than 20 years' experience advising and working for numerous technology start-up companies, assessing their business models, and evaluating their intellectual property. In describing Tabletop's business model, she simply observes that the concepts of "supply chain partnership," "supply chain management," and "assembly-oriented manufacturing processes," appear in the business practice applied by Tabletop as well as numerous other start-up companies.

Moreover, while the scope of Ms. Kasznik's opinions is apparent from her report, any possible confusion was certainly eliminated by her unequivocal answers to Citizen's questioning at her deposition. Citizen's disregard of this unequivocal testimony, and nonsensical interpretation of Ms. Kasznik's opinions, are without support. As set forth below, Ms. Kasznik unquestionably satisfies the requirements of FRE 702, and Citizen's Motion should be denied.

---

[1] Defendants Citizen Systems America Corporation and Citizen Systems Japan Co., Ltd. are referred collectively herein as "Citizen."

## II. MS. KASZNIK IS WELL-QUALIFIED TO TESTIFY AS TO THE ACTUAL OPINIONS SHE PROVIDES

### *A. Ms. Kasznik Has More Than 20 Years' Experience Working with Start-Up Companies and Advising on Their Business Models*

Ms. Kasznik obtained her M.B.A. in 1993 from the Haas School of Business at the University of California at Berkeley, where she focused on finance and entrepreneurship. Since obtaining her M.B.A. degree, Ms. Kasznik has focused nearly exclusively on working with, advising, and assessing technology-based companies, ranging in size from start-ups to Fortune 100 global corporations, and in particular providing valuations of such companies and their intellectual property ("IP"). (*See* Declaration of Jeanne A. Fugate ("Fugate Decl."), Trial Ex. 331 at Appx A.) Specifically, Ms. Kasznik previously served as the Chief Financial Officer for a Silicon-Valley based telecommunications start-up company, as well as the co-founder of a Silicon-Valley based cleantech start-up where she served as interim-CFO. (*Id.* at Appx A-2.) She has also held senior positions at IP and litigation consulting firms, where she established and led practice groups specializing in intellectual property valuation. (*Id.*)

Since 2009, she has served as President of Foresight Valuation Group, LLC, an intellectual property consulting firm that Ms. Kasznik founded to provide advisory services related to the valuation and monetization of intellectual property and emerging technologies. (*Id.* at Appx A-1.) Additionally, Ms. Kasznik has been a Lecturer in Accounting at the Stanford Graduate School of Business ("GSB") for the last seven years, teaching an M.B.A. course entitled "Intellectual Property: Financial and Strategic Management." (*Id.*) Ms. Kasznik has also been a Lecturer in Accounting at the Stanford Law School, as well as a Lecturer for the Stanford Office of Technology Licensing ("OTL") where she lectures on business models for bringing Stanford technology to market (Google and Genentech are two examples of companies started based on Stanford technology, as well as many other companies



BOIES SCHILLER FLEXNER LLP

in Silicon Valley). (*See* Fugate Decl., Kasznik Depo. 176:12-19.) Ms. Kasznik has taught a class at the Stanford Continuing Studies program, focused on financial and business modeling for start-ups. Finally, starting in 2019, Ms. Kasznik will be joining the Stanford GSB "Go to Market" international program where she will be teaching classes on business and financial modeling to local entrepreneurs in foreign countries.

Ms. Kasznik maintains board membership and/or advisory roles with numerous start-up companies, as well as start-up accelerators and investor groups throughout Silicon Valley, as well as in Europe and Israel, most of which involve mentorship related to the commercialization of intellectual property and technology. (Trial Ex. 331 at Appx A-3.) Ms. Kasznik is the incoming Chair of the High Tech Sector of the Licensing Executives Society (LES), a global organization of technology licensing executives, including many hardware companies. (*Id.* at Appx A-1.) She is also a frequent speaker at start-up and IP conferences, as well as author on topics related to start-up business modeling and valuation, including a start-up advice column in the Business Journal, a national media publication with editions in over 40 metropolitan areas. (*Id.* at Appx A-3 – A-10.)

Moreover, during her more than 20 years' of professional experience working with technology companies, Ms. Kasznik has had direct experience performing a large number of IP and business valuations for consumer electronics companies and other electronic hardware companies. (Fugate Decl., Kasznik Depo. at 294:12-300:7.) She has specifically advised high-tech start-up companies on their business models, and observed that such companies commonly employ an "outsourced manufacturing business model." (*Id.* at 14:14-25.) Ms. Kasznik has performed valuations and assessments where the supply chain is considered (*id.* at 31: 7-18), and has advised clients on the issue of component supply chain management as part of her evaluation and advice on the formation of their business models (*id.* at 12:23-13:1).

BOIES SCHILLER FLEXNER LLP

### ***B. Ms. Kasznik's Opinions Do Not Require Operational Knowledge She Concedes She Does Not Have***

Ms. Kasznik was designated by Tabletop to testify *inter alia* as to Tabletop's reasonable expectations of Citizen as a design partner. (ECF No. 118 at 1.) More specifically, Ms. Kasznik opines on the business model adopted by Tabletop as it compares to models adopted by other start-up companies, particularly those in the hardware or electronics industries. (Trial Ex. 331 at 3-4, 10-12; Kasznik Depo. at 15:2-16:5, 187:23-189:12.)

As part of her evaluation of Tabletop's business model, Ms. Kasznik observes that Tabletop used an "assembly-oriented outsourced manufacturing process"—in which a product owner relies on an ecosystem of component suppliers or a "supply chain"—and identifies Citizen as a primary "supply chain partner" on which Tabletop relied to deliver expertise on a key product-differentiating component, the printer mechanism for the Device. (Trial Ex. 331 at 3, 10-13; *see also* Kasznik Depo. at 19:11-21:14, 41:10-42:1.) Ms. Kasznik notes that the outsourced manufacturing business model is regarded as "good practice," "particularly common for hardware manufacturing companies (like Tabletop and the makers of smartphones), and [] particularly beneficial for start[-]ups." (Trial Ex. 331 at 4, 11-12.) However, when a supply chain partner fails to deliver the relied upon expertise, the results can be financially detrimental to the product owner, and the damage cannot be quickly or cheaply remedied. (*See id.* at 3-6, 35-38.) In Tabletop's case, Ms. Kasznik opines that Tabletop adopted the "[r]ight business model," but Citizen's failure to deliver its expertise on the printer mechanism created a "problem in the ecosystem" beyond Tabletop's control, which led directly to Tabletop's extensive damages. (Kasznik Depo. at 187:23-189:1; *see also* Trial Ex. 331 at 35-38.)

Notably, Ms. Kasznik's references to "supply chain partnerships," "supply chain management," and "assembly-oriented manufacturing processes" do not delve



BOIES SCHILLER FLEXNER LLP

into the granular operational details of these concepts. Ms. Kasznik's observation that Tabletop adopts these practices as part of its business model—much like other technological start-up companies she has analyzed—does not require such operational knowledge. Indeed, Ms. Kasznik will testify, as she did in her deposition taken by Citizen in this action, that her use of these terms is in a general business sense, not an operational sense, and she does not hold herself out to be an operational expert on supply chain operations or manufacturing processes. (Kasznik Depo. at 13:13-17, 14:20-25, 32:23-33:2.)

## III. CITIZEN'S MOTION *IN LIMINE* NO. 9 IS WITHOUT MERIT AND SHOULD BE DENIED

### *A. Legal Standard*

FRE 702 requires that the expert be qualified and that the "[e]xpert testimony . . . be both relevant and reliable." *Estate of Barabin v. AstenJohnson*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001)).

An expert's qualification may be established either "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. FRE 702 "contemplates a *broad conception* of expert qualifications." *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (emphasis in original; quoting *Thomas v. Newton Intl. Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). Indeed, the advisory committee notes "emphasize that [FRE 702] is broadly phrased and intended to embrace more than a narrow definition of qualified expert." *Id.*; *see also* Fed. R. Evid. 702 Adv. Comm. Note ("Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony").

FRE 702's test of reliability is "'flexible.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)). A "trial court not only has broad latitude in determining whether



BOIES SCHILLER FLEXNER LLP

an expert's testimony is reliable, but also in deciding *how* to determine the testimony's reliability." *Hangarter*, 373 F.3d at 1017 (emphasis in original; quoting *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002)); *see also United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000) ("Nowhere in *Daubert, Joiner* or *Kumho Tire* does the Supreme Court mandate the form that the inquiry into . . . reliability must take"). Where, as is here, non-scientific testimony from an expert is offered, the "*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Id.* (citations and quotations omitted); *see also Kumho Tire*, 526 U.S. at 150 (recognizing that for non-scientific or non-engineering testimony, "the relevant reliability concerns may focus upon personal knowledge or experience").

***B. Citizen Concedes the Relevancy of the Testimony***

In its Motion, Citizen identifies only the legal standard for reliability required under FRE 702, but argues at length that Ms. Kasznik lacks sufficient qualifications. (*Compare* Mot. at 4-5 *with* Mot. at 5-7.) Notwithstanding Citizen's apparent confusion regarding the FRE 702 analysis, Tabletop establishes herein that Ms. Kasznik is both qualified and offers reliable testimony regarding Tabletop's business model. Moreover, as evidenced by Citizen's silence in the Motion as to the relevancy of Ms. Kasznik's testimony, there is no dispute that Ms. Kasznik's testimony is relevant. Tabletop therefore does not address the undisputed relevancy of Ms. Kasznik's testimony in this Opposition.

***C. Tabletop's Expert, Efrat Kasznik, is Amply Qualified Under FRE 702 to Testify On the Subject of Business Models Adopted by Start-Up Companies and Tabletop in Particular***

Citizen's misunderstanding and mischaracterization of the subjects of Ms. Kasznik's expertise and testimony require correction. Citizen's Motion claims

BOIES SCHILLER FLEXNER LLP

repeatedly that Ms. Kasznik aims to testify on the subjects of "supply chain partnerships," "supply chain management," or "assembly-oriented outsourced manufacturing," and contends that Ms. Kasznik is not qualified to testify about these terms. (Mot. at 3, 5-7.) This entire contention is based on a misreading and extreme narrowing of Ms. Kasznik's proffered testimony. As set forth above, *see* Section II.B., Ms. Kasznik's opinions pertain to Tabletop's selected business model, and the reasonableness of Tabletop's reliance on Citizen to provide a suitable printer mechanism for the Device in applying its business model. She is not opining on the operational aspects of supply chains or manufacturing processes, nor does she hold herself out to be an operational expert. (*See* Kasznik Depo. at 13:13-17 ("I'm an expert on start[-]up business models; that's my expertise, that being one of them. So I am not an operational person, but I'm an expert on implementing business models to achieve certain economic results."), 32:2-6 ("So my answer to that is that I wouldn't be presented as an expert on supply chain management. I would be presented as a valuation expert or damages expert or an intellectual property expert.").) Citizen's attempt to reframe the nature of Ms. Kasznik's opinions by fixating on a few terms is without merit, and no less absurd than contending that Ms. Kasznik's use of the term "ecosystem" means she is offering an opinion about earth science for which she lacks the requisite biology background.[2]

Viewed in the correct context, it is readily apparent that Ms. Kasznik is abundantly qualified to provide opinions on a technological start-up company's implementation of a particular business model based upon her more than 20 years' experience working, consulting, and teaching in this very field. *See supra*, Section

---

[2] Indeed, this Motion seeking to preclude Ms. Kasznik from using certain words in her testimony is effectively a second attempt at Citizen's Motion *in Limine* No. 3, which seeks to preclude (without basis) any and all use of the terms "partner" and "partnership" at trial. As discussed in Tabletop's Opposition to Motion *in Limine* No. 3, Citizen's perceived concerns do not merit exclusion, particularly because the concerns are easily eliminated by questioning and argument at trial.



BOIES SCHILLER FLEXNER LLP

II.A. Unable to negate Ms. Kasznik's extensive education, training, and experience, Citizen instead focuses on the unremarkable fact that Ms. Kasznik has not testified in a court of law as to the difference between a component part supplier and a supply chain partner. (*See* Mot. at 6.) Again, this argument misses the point, as Ms. Kasznik is not opining on the operational aspects of these subjects. Moreover, FRE 702's requirement of qualification does not depend upon *testifying* experience, and tellingly, Citizen fails to identify any authority suggesting otherwise. That Ms. Kasznik has not testified in a legal proceeding on the specific terms Citizen has lifted out of context has no bearing on her qualifications.

Citizen's unsupported attempt to narrowly reframe Ms. Kasznik's testimony in order to argue that she lacks qualifications to testify must be rejected. Ms. Kasnik's extensive knowledge, education, training, and experience "lays at least the minimal foundation . . . required in order to give expert testimony" on the business models frequently adopted by hardware and technology start-up companies, and Tabletop in particular. *Thomas*, 42 F.3d at 1269.

***D. Ms. Kasznik's Testimony is Reliable Under FRE 702***

Citizen also claims that Ms. Kasznik's testimony is somehow unreliable, but provides no explanation for this cursory assertion. (Mot. at 7.) In light of Citizen's failure to fully articulate, let alone provide support for its argument, its attempt at challenging the reliability of Ms. Kasznik's opinions should be rejected out of hand.

In any event, Ms. Kasznik's opinion of Tabletop's business model is demonstrably reliable. Because Ms. Kasznik's area of expertise (business models adopted by technology companies, including hardware start-ups) is not scientific or technical, the reliability analysis is "not contingent upon a particular methodology or technical framework." *Hangarter*, 373 F.3d at 1018. Rather, the Court satisfies its role as gatekeeper by evaluating the non-technical expert's experience, training, and education in determining the reliability of proffered testimony. *Id.* (affirming district court's conclusion that non-scientific expert's testimony was reliable based



BOIES SCHILLER FLEXNER LLP

upon review of expert's experience, training, and education; citing cases confirming the same). Here, where Ms. Kasznik has extensive education and over 20 years of professional and hands-on experience with technology and hardware start-up companies and the business models that they adopt, the reliability of her testimony on this topic is beyond reproach.

## IV. CONCLUSION

For all the reasons stated herein, Citizen's Motion *in Limine* No. 9 to exclude Tabletop's expert, Efrat Kasznik, from offering testimony or opinions regarding "supply chain partnerships," "supply chain management," or "assembly-oriented manufacturing processes" is without merit and should be denied in its entirety.

Respectfully submitted,

DATED: September 14, 2018

BOIES SCHILLER FLEXNER LLP
JEANNE A. FUGATE
LENNETTE W. LEE
JULIA J. BREDRUP

By /S/
JEANNE A. FUGATE
Attorneys for TABLETOP MEDIA, LLC



BOIES SCHILLER FLEXNER LLP